Davis, J.
The statute under authority of which the contract in question was made, was passed in April, 1900 (94 O. L., 119). It does not differ very materially from the general provisions of .the Revised Statutes in regard to its subject-matter, except as indicated in its title, that is, it authorizes the city to pay not exceeding one-half of the costs and ex *447 penses thereof and to issue bonds for such purposes. It also provides that section 2702 of the Revised Statutes shall not apply to contracts made under the act. Power to improve the streets, to make assessments on abutting lot owners, to issue bonds in anticipation of the payment of assessments, and to pay a certain proportion of the costs and expenses of the improvement, was already invested in all the cities and villages of the state.
The classification which is applied in the act in question would have been accepted generally as constitutional, prior to the decisions of this court which led to the extraordinary session of the general assembly in October, 1902; and such view would have been justified by former utterances of this court. The act itself has not yet been specifically declared to be unconstitutional by this court, although doubtless it may be justly inferred from the decision announced in The State ex rel. Knisely v. Jones, 66 Ohio St., 453, that such a conclusion, would be reached. In that case it was held that the system of classification and reclassification into classes and grades of classes, as then in vogue, was unconstitutional because it evinced an intention of the legislature to isolate the principal cities of the state into classes each containing but one city. That was admittedly so in the case then before the court and also in State ex rel. v. Beacom, 66 Ohio St., 491. In the case first cited it was held that, “an act to confer . such power upon a single city by such classification is repugnant to section 1 of article 13 of the constitution.” The court also expressly reserved an opinion on ‘the question whether the provisions of the sixth section of article 13 is an exclusive classi.fication of municipalities into cities and villages. *448 The classification of this act, “cities of the second class and fourth grade,” unlike the classification in most, if not all, other cases, included a considerable number of cities in different parts of the state, being cities of not more than ten thousand population and not less than five thousand. So that with the considerations already suggested, there was ground for a contention that the present act ultimately would be held to be constitutional; and this is so although we may assume, for the purposes of this case, that under the decisions to which we have referred the act would have been held by this court to have been unconstitutional.
The relator contends that whether the act be unconstitutional or not, as being special legislation, the city is estopped from setting up that defense, inasmuch as it entered into this contract immediately after the decisions of this court which have been referred to were announced, with no objection or suggestion as to its want of power to make the same, and the plaintiff entered upon the performance of his contract and completed it before the objection was made that this act was unconstitutional. It may be accepted as the law that there can be no estoppel where there is an entire absence of power; but the answer to that in this case is, that the corporation was not acting ultra vires, that is, without any power whatever under the act in question or from any other source. For, as it has already been suggested, the city had ample power to improve the streets and to pay for them under other statutes, this statute differing only in the details as to the amount that the city should pay as its portion of the costs and expenses and as to the manner in which bonds should be issued, sold, and the proceeds applied, and *449 in the provision that section 2702 of the Revised Statutes shall not apply to contracts made under the provisions of this act. The act provides: “Section 9. All other provisions of the Revised Statutes relative to the improvement of streets and alleys, and assessments to pay the cost thereof, not inconsistent with the provisions of this act, shall remain in' full force and he followed by councils of such cities in making improvements and assessments therefor.” ‘The powers elsewhere granted to the municipality are expressly read into this act in aid of it, by this provision; and it follows that a contract made under this act must necessarily be supported by powers elsewhere granted to the municipality. Hence it cannot be true in this instance that, conceding the unconstitutionálity of the act there was a total want of power in the city to make the contract. It is precisely such a case as that in which it often has been held that a municipal corporation may be estopped, because the existence of an apparent corporate power to contract upon the subject-matter and the silence of the' municipality in relation to matters of less obvious importance, may entrap an innocent party into disastrous consequences.
While it is generally true that unconstitutional statutes aré nullities from the beginning and that everything done under them is absolutely void, yet it is not universally so. It was said by the court in Findlay v. Pendleton, 62 Ohio St., 88-89; “Liabilities are occasionally enforced against parties growing'out of proceedings under an unconstitutional act, as in Tone v. Columbus, 39 Ohio St., 281, and Mott v. Hubbard, 59 Ohio St., 199, but such enforcement is not by virtue' of the unconstitutional'act, but by virtue of the acts of the parties whereby they have *450 become estopped' from contesting the liability against them.” In State ex ret. v. Mitchell, 31 Ohio St., 592, it was held that an act to provide for the improvement of streets and avenues in certain cities of the second class .was unconstitutional, and that “notwithstanding the unconstitutionality .of the act, where the abutting lot owners have caused a street to be improved under the act, and bonds of the city to be negotiated to pay for the improvement, all who have participated in causing the improvement to be made, are estopped from denying the validity of an assessment made in accordance with the act, to pay such bonds.” And in the opinion it was said: The principles of estoppel apply where the proceedings are questioned on the ground of the unconstitutionality of the statute under which they are had, as well as where they are sought to be impeached on other grounds. Ferguson v. Landran, 1 Bush, 548 ; Ferguson v. Landran, 5 Bush, 230. Hence, notwithstanding the unconstitutionality of the act, the rights of third parties have so intervened that it is the duty- of. the commissioners to complete the apportionment of the assessment in accordance with the terms of the act.” In Tone v. Columbus, 39 Ohio St., 281, it was determined by this court that: ‘ ‘ The principles of estoppel apply as well where proceedings of a .corporation are questioned on the ground of the unconstitutionality of the statute under which they are had, as where they are attacked upon other grounds, unless such proceedings, or what is sought to be. accomplished by them, are per se illegal or malum prohibitum.• Want of power in the corporation may be waived, or an estoppel may arise from failure to assert it at the proper time.”. It is replied to this argument that the cases now- cited are cases *451 in which the principle of estoppel was held to apply as against private individuals only, and that it was not determined in any of these cases that estoppel will run against a municipal corporation where the statute under which it assumed to act is unconstitutional. But no good reason appears why the doctrine of estoppel should not he applied as against a municipal corporation as well as a private individual where the power to act does not entirely depend upon the unconstitutional act, and this seems to he the purport of the authorities. 1 Dillon Munic. Corp. (4 ed.), sec. 457; 2 Id., sec. 935; 1 Smith Munic. Corp., secs. 227, 229, 233; 2 Herman on Estoppels, sec. 1223.
Now what are the facts in the present case which raise the question of estoppel? Sometime in the spring of 1902, the precise date not appearing in the record, a majority of the abutting lot owners petitioned the council of the city of Mt.- Yernon to pave Gambier street and Gambier avenue between Main street and Eogers street. Due notice was given of the filing of this petition, and the council thereafter determined that a majority of the owners of the real estate abutting on the improvement had signed the petition; that the material petitioned for by them was proper material to be used in the improvement; that it was necessary to improve the street and avenue as asked for in the petition; and thereupon the council determined by resolution that it was necessary to improve the said street and avenue by grading and paving the same, and assess the cost thereof, except at the intersection of the streets thereon, back upon the abutting property, and to issue bonds of said city according to law for the payment of the cost and expense of making said improvement. *452 Thereafter the city caused its proper officers to prepare plans and specifications for said improvement, and the city advertised for bids for furnishing the material and doing the work of making said improvement according to said plans and specifications, and the relator bid on the work and was the lowest bidder therefor, and was thereby entitled by law to the contract for the performance of that work.
All of this took place prior to the decision of The State ex rel. Knisely v. Jones, 66 Ohio St., 453. The relator’s proposal was filed with the city on the sixteenth day of June, ten days before the announcement of that decision, June 26, 1902, and, for aught that appears, in perfect good faith and reliance, and certainly with good reason to rely, upon the constitutional validity of the statute under which these proceedings were had. Twelve days after the announcement of that decision, the city authorities accepted said proposal and entered into the written contract in question in this case, without having suggested any objection upon the ground of the unconstitutionality of the act; nor was any such objection made until about the thirteenth of November, 1902.
Indeed the presumption is just as strong that the city, by its officers, knew what had been decided in State ex rel. v. Jones and State ex rel. v. Beacom, and what would be decided as to this act, if the case ever should arise, as the relator; and if with that knowledge the city accepted the relator’s bid, made previous to those decisions and in reliance upon a previous line of decisions, and upon that bid entered into a contract with him, it indicates, at the least, a willingness that the relator should be misled to his irreparable injury and to the advantage of the city many thousands of dollars. These facts, and all the *453 considerations which we have adverted to, would seem to make it in the highest degree inequitable-to allow the city authorities, after they had obtained the benefits of this contract, to make the claim of their utter want of power to enter into it or to perform it.
But another contention is made in the case, and that is, that section 2702 of the Revised Statutes, familiarly known as “the Burns law,” has not been complied with. If we are right in our view that the plaintiffs in error are estopped from alleging the unconstitutionality of the act under which they proceeded, then there is nothing in the contention upon this point; for the act specifically provides, in the seventh section thereof, that “the provisions of section 2702 shall not apply to contracts made under the provisions of this act.” This provision may be read as an exception to section 2702. Cincinnati v. Holmes, 56 Ohio St., 104; Comstock v. Nelsonville, 61 Ohio St., 288, 297.
But we think that the relator is at least premature in his application for relief by proceedings in mandamus. A distinct issue of fact is made in the record as to the performance of the contract by the relator, according to the plans and specifications. It is true that the circuit court makes a finding that the contract was “substantially performed,” but it also finds that there were certain defects in material and workmanship existing in the work at the time that it was examined by the city civil engineer and paving committee. In other words the relator has not shown a clear legal right to recover under his contract. This controversy between the parties cannot be determined upon the petition for mandamus. Contractual rights can only be settled in an action at law. *454 "We therefore for that reason alone reverse the case and remand the same to the court of common pleas for further proceedings.

Judgment accordingly.

Spear, C. J., Price and Crew, JJ., concur.
Shauck, J., concurs in the third proposition of the syllabus and in the judgment.